IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JEFFREY BARROWS PLAINTIFF

v. Case No. 08-2002

CITY OF FORT SMITH, ARKANSAS and KEVIN LINDSEY, CHIEF OF POLICE, as an Individual and in his Official Capacity DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter requires the Court to determine whether Plaintiff's termination violated his constitutional right to due process and right to petition the government for redress of grievances. Before the Court are Defendants' Motion to Dismiss (Doc. 2), and Brief in Support (Doc. 4), Plaintiff's Response (Doc. 7), and Brief in Support (Doc. 8), and Defendants' Reply (Doc. 9).

On January 2, 2008, Plaintiff initiated this action alleging he was terminated without cause, and that such termination violated his constitutional rights to due process and to petition the government for redress, as well as the Arkansas Whistler-Blower Act, codified at A.C.A. § 21-1-601. On January 28, 2008, Defendants filed a motion to dismiss the complaint contending that Plaintiff had failed to state a viable claim that either his due process rights were violated or that he was retaliated against for exercising his right to petition the government. Alternatively, Defendants asked the

Court to abstain from ruling in this matter, pursuant to the Pullman Abstention Doctrine, until the Arkansas courts determine whether there was cause under Arkansas law for termination of Plaintiff's employment. For the reasons reflected herein, Defendants' Motion to Dismiss is **GRANTED.**

**A. Background**

Plaintiff, Jeffrey Barrows, ("Barrows") was employed by the Fort Smith Police Department ("the Police Department") from June, 1992 until his termination on October 2, 2007. Prior to his termination, Barrows served a period of time as Interim Chief of Police, and at the time of his termination, was in charge of the Administrative Services Division of the Police Department. Prior to his suspension from duties on or about August 23, 2007, Plaintiff was in good standing with the Police Department and had been consistently evaluated above average in his performance reviews throughout his career. In early 2007, Separate Defendant Chief of Police, Kevin Lindsey, ("Chief Lindsey"), was hired as the Chief of Police for the City of Fort Smith ("the City"), and Plaintiff resumed his position as Major of the Administrative Services Division reporting directly to Chief Lindsey.

Plaintiff alleges that during his tenure, Chief Lindsey instituted a number of programs and initiatives without seeking the advice or input of staff responsible for the



AO72A
(Rev. 8/82)

execution and implementation of these policies and initiatives. He contends that the execution of these programs and initiatives led to difficulties, for in many instances they were inconsistent with existing policies of the Police Department, were potentially wasteful of public funds, and possibly contravened the laws of the State of Arkansas. Additionally, Plaintiff contends these initiatives were started without an assessment of issues concerning potential liability risk to the City, staffing and budgetary matters, which led to widespread problems in staff morale and in the proper execution of the initiatives.

Plaintiff alleges that on or about July 13, 2007, he had a conversation with Chief Lindsey in which he informed him that he had not been notified that the citizen policing program was moving forward, and that he was not sufficiently informed concerning the program. He contends this compromised his ability to perform his duties as head of the Administrative Services Department. Further, Plaintiff contends he informed Chief Lindsey that there were significant issues concerning the implementation of this program that had not been resolved, and that he felt compelled to communicate his concerns with Chief Lindsey's direct supervisor, City Administrator Randy Reed ("Administrator Reed"). Plaintiff then communicated his concerns to Administrator Reed, and on



AO72A
(Rev. 8/82)

or about July 13, 2007, Administrator Reed and Chief Lindsey met to discuss the concerns raised with the program.

After the meeting, Chief Lindsey held a staff meeting with his three top administrators, Plaintiff, Major Steve Howard ("Howard"), and Major Ricky Brooks ("Brooks"). Plaintiff alleges that Chief Lindsey apologized during the meeting for not keeping them better informed and involved in decisions concerning their various areas of responsibility, and asked each major whether they had confidence in his ability to perform his job. According to the Plaintiff, he and Howard responded that they did not have confidence in Chief Lindsey's abilities, while Brooks responded he did. Following the meeting, information concerning Plaintiff and Howard's assessment of Chief Lindsey's ability to run the department was circulated throughout the Police Department. As a result, Administrator Reed began a review of Chief Lindsey's performance. The review lasted several months, and included discussions with both uniformed and non-uniformed members of the Police Department. The review raised questions from the Fort Smith City Board regarding aspects of the operation of the Police Department, and resulted in correspondence from an attorney to Administrator Reed which reflected that there was a "high ranking member of the Fort Smith Police Department spreading rumors that Chief Lindsey

would be dismissed as Chief of Police."

On or about August 23, 2007, Chief Lindsey filed a complaint against Plaintiff that listed a number of policy violations including failure to observe rules, disrespecting others, conduct unbecoming as an officer, publicly criticizing or ridiculing the department in a defamatory manner, ridiculing, mocking, taunting or belittling another person, conducting personal business while on duty, and seeking influence or intervention of a person outside the department for personal purposes. Chief Lindsey accused Plaintiff of spreading rumors both inside and outside the Police Department and requested that Plaintiff be relieved of duty and placed on administrative leave pending a full investigation of the complaint by Internal Affairs. Chief Lindsey demoted Howard to Captain and suspended him for thirty days as well. Plaintiff contends that the Internal Affairs' complaint filed by Chief Lindsey was based on a false claim. Specifically, Plaintiff alleges that Chief Lindsey falsely stated in his complaint that Administrator Reed was the one that informed him that Plaintiff was the source of rumors about Chief Lindsey.

Plaintiff contends that Chief Lindsey violated policies of the Police Department by directing the investigation of Plaintiff and interviewing witnesses outside the presence of

Internal Affairs officials, and by not providing him with a statement of facts justifying his discharge. Plaintiff claims that Chief Lindsey made the decision to terminate him at least thirty days prior to his suspension and ultimate termination, and therefore, did not afford him procedural due process. Plaintiff appealed Chief Lindsey's decision to terminate him to the Fort Smith Civil Service Commission ("the Commission"), and after a two-day hearing, the Commission sustained the discharge on December 1, 2007. Plaintiff did not seek judicial review of the Commission's decision in the Sebastian County Circuit Court as authorized by A.C.A. § 14-51-308(e)(1)(B)(ii). Instead, Plaintiff filed this action on January 2, 2008, alleging violations of his Constitutional rights and seeking judicial review of the Commission's decision under the doctrine of pendent jurisdiction. Defendants filed their motion to dismiss on January 28, 2008.

**B. Standard of Review**

In determining whether a motion to dismiss should be granted, the court must test the legal sufficiency of a complaint. A motion to dismiss should only be granted if it appears from the face of the complaint that the plaintiff cannot prove any set of facts to support his claims for relief. *Schaller Tel. Co. V. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). In considering a motion to dismiss,



AO72A
(Rev. 8/82)

the Court takes all allegations in the complaint as true and views the facts most favorably to the non-moving party. *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 405 (8th Cir. 1999).

When a dispositive issue of law precludes a plaintiff from being entitled to relief regardless of the allegations of fact, the plaintiff might prove, Rule 12(b)(6) authorizes a court to dismiss that plaintiff's claims. *Neitzke v. Williams* 490 U.S. 319, 326-327 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In order to streamline litigation and dispense with needless discovery and factfinding, courts are required to dismiss legal claims that are destined to fail regardless of whether they are nearly viable. *Neitzke*, 490 U.S. at 326-27 (stating "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable . . . . [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.").

**C. Discussion**

Plaintiff alleges that he was terminated without cause by Defendants in violation of his constitutional right to due process and his right to petition the government to redress grievances.

**I. Due Process**



AO72A
(Rev. 8/82)

Plaintiff contends that he was not provided a meaningful opportunity to be heard at a predetermination level concerning his discharge, and therefore, Defendants deprived him of a property interest in violation of the due process clause of the Constitution of the United States. Defendants contend that the Supreme Court has held that a viable procedural due process claim requires both a taking and a lack of post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981). They argue that Plaintiff's claim must fail because a post-deprivation remedy was available to him.

The Constitution protects property interests which it does not create itself, but rather stem from independent sources, such as state law. The Arkansas General Assembly provides that "cities of the first class...may establish a board of Civil Service Commissioners for the police and fire departments of their cities." A.C.A. § 14-51-102 (Repl. 1998). Fort Smith, a first class city, has utilized a Civil Service Commission for over forty years to prescribe, amend and enforce rules and regulations governing the fire and police departments, pursuant to A.C.A. § 14-51-301. These rules and regulations have the same force and effect of law. A.C.A. § 14-51-301(a)(2)(Supp. 2007). Furthermore, "all employees in any...police department affected by...[the Arkansas civil service statutes for police/fire departments],



AO72A
(Rev. 8/82)

shall be governed by rules and regulations set out by the chief of their respective police...departments after rules and regulations have been adopted by the governing bodies of their respective municipalities." A.C.A. § 14-51-302 (repl. 1998). The State of Arkansas has allowed the City of Fort Smith to utilize a Civil Service Commission to determine if uniformed police officers and firefighters have job protection within the parameters of the rules and regulations established by the Chief of Police and adopted by the Fort Smith Board of Directors.

In addition, the Arkansas General Assembly created a procedure where decisions of the Fort Smith Civil Service Commission could be reviewed by an appropriate circuit court upon appeal by either the city or the employee. A.C.A. § 14-51-308(Supp. 2007). The review process provides the city and the employee the opportunity to offer evidence and/or testimony on the record before the circuit court, and to appeal the circuit court action to the Arkansas Supreme Court. A.C.A. § 14-51-308(e)(2)(A)(Supp. 2007).

The Defendants contend that Plaintiff's federal claim must fail because there was a state post-deprivation remedy available to him, which he failed to exhaust. The Defendants cite *Light v. Blackwell*, for that proposition. 472 F. Supp. 333, 334 (E.D. Ark. 1976). In *Light,* the plaintiff property



AO72A
(Rev. 8/82)

owners filed a 42 U.S.C. § 1983 action alleging that the Arkansas State Highway Commission and others violated their right to constitutional due process by taking their property without just compensation. *Id.* at 334. The court held that the claim failed to invoke federal court jurisdiction because the "plaintiffs have available to them the remedy of resorting to the State Claims Commission...[which] satisfies the constitutional requirement of due process and is readily available to the plaintiffs for the relief that they seek for the alleged wrongful acts." *Id.* at 336.

The Plaintiff argues that he is not required to exhaust state remedies prior to filing a procedural due process claim in federal court under 42 U.S.C. § 1983. In support, he cites *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982), for its holding that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. at 517. In *Patsy*, the plaintiff filed a § 1983 action alleging that she was denied employment opportunities solely on the basis of her race and sex.

The Defendants argue that the United States Supreme Court in *Parratt*, supra, held that procedural due process claims cannot be maintained in federal court where adequate state post-deprivation remedies are available. 451 U.S. 527, (1981).



AO72A
(Rev. 8/82)

In *Gilmere v. City of Atlanta,* the Eleventh Circuit held that the court in *Parratt's* "principal concern was to prevent the trivialization of § 1983 into a 'font of tort law'." 774 F.2d 1495, 1498 (11th Cir. 1985). Further, the court in *Gilmere* held that the analysis in *Parrett* is founded upon the conclusion that deprivation of procedural due process does not occur until a plaintiff is "denied any procedure for redress in the state system." *Id.* at 1499. The Eleventh Circuit noted that the Supreme Court's reasoning in *Parratt* "implicitly distinguishes procedural due process claims from all the other constitutional violations that are complete regardless of the subsequent adjudicative procedures being used." *Id.* at 1499.

In the instant case, Plaintiff alleges that his right to procedural due process was violated when he was terminated by the Defendants without a meaningful opportunity to be heard at a pre-determination hearing. The Plaintiff was provided written notice on August 23, 2007, that the Police Department was conducting an internal investigation. On August 31, 2007, Plaintiff was provided notice that a pre-determination hearing was being offered to him, and that he could consult an attorney. On October 19, 2007, Plaintiff informed Defendants that he declined to participate in a pre-determination hearing. After his termination, Plaintiff appealed the

decision to the Fort Smith Civil Service Commission. After a two-day hearing, the Commission sustained the Plaintiff's discharge on December 1, 2007. Plaintiff chose not to file the hearing transcript with the Sebastian County Circuit Court, as required to initiate a review of the Commission decision, but rather sought judicial review of his discharge in this Court.

The Plaintiff alleges that he was deprived of a property interest, namely his employment with the Police Department, without procedural due process of law as required by the Fourteenth Amendment. The pertinent text of the Fourteenth Amendment provides:

> "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law* ; nor deny to any person within its jurisdiction the equal protection of the laws." *Parratt v. Taylor*, 451 U.S. 527, 536 (1981). (emphasis added).

Although the Plaintiff alleges that the Defendants were acting under color of state law when they terminated him, he has failed to state a viable due process claim. The Fourteenth Amendment protects only against deprivations "without due process of law." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Therefore, our inquiry must focus on whether the Plaintiff has



AO72A
(Rev. 8/82)

suffered a deprivation of property without due process of law. In particular, we must determine whether the remedies provided by the State of Arkansas satisfy the requirements of procedural due process.

The United States Supreme Court has recognized that post-deprivation remedies offered by a State can satisfy the Due Process Clause. In such cases, the normal pre-determination notice and opportunity to be heard is permitted if the state provides a post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). The Court held that some form of hearing is required before a State finally deprives a person of his property interests. *Id.* at 540. The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

The Court can only conclude that the Plaintiff was afforded the opportunity to be heard both pre-determination and post-deprivation, but opted not to exhaust those remedies. The Plaintiff was offered a pre-determination hearing by letter on August 31, 2007, and was entitled to a post-deprivation appeal of the Commission's decision to the Sebastian County Circuit Court. Plaintiff declined the pre-determination hearing and chose to initiate this action



AO72A
(Rev. 8/82)

instead of filing for a review of the decision in circuit court. We find that the Plaintiff's procedural due process claim fails because the Plaintiff was afforded due process of law by the State. Accordingly, the Plaintiff's due process claim is dismissed with prejudice.

**II. First Amendment**

Plaintiff contends that he was retaliated against by Defendants for exercising his right to petition the government to redress his grievances in violation of rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. Specifically, Plaintiff alleges that he was terminated by the Defendants because he expressed concerns to Administrator Reed regarding a new program that Chief Lindsey intended to implement. Plaintiff claims that there were significant issues concerning the implementation of this program that had not yet been resolved, that were potentially wasteful of public funds and that could contravene the laws of the State of Arkansas. Plaintiff alleges that he was terminated by the Defendants for expressing these concerns to Administrator Reed and for informing Chief Lindsey that he did not have confidence in his abilities at the July 13, 2007 staff meeting, in violation of his First Amendment right to redress grievances to the government.

Defendants contend that the Plaintiff was terminated for



AO72A
(Rev. 8/82)

performing personal business while on duty, creating internal departmental disharmony, by making disparaging remarks to co-workers and subordinates about his superior officer, i.e., the chief of police, impairing discipline, and destroying the relationship of loyalty and trust required of high ranking officers. Defendants argue that even if Plaintiff had been terminated as a result of his expressions to Administrator Reed and Chief Lindsey, these allegations do not amount to a First Amendment claim per the recent decision of the Supreme Court in *Garcetti v. Cebello,* 547 U.S. 410 (2006).

In *Garcetti,* the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employee discipline." *Id.* at 414. In *Garcetti,* a deputy district attorney alleged that he was retaliated against by his government employer for writing a memorandum in which he pointed out misrepresentations made in a search warrant affidavit and recommended that the case be dismissed. The Supreme Court began its analysis in *Garcetti* by determining whether the district attorney spoke as a citizen on a matter of public concern when he expressed his views. The Court found it was not dispositive that he had expressed his views at work or that the memorandum concerned

the subject matter of his employment. Rather, the Court concluded the controlling factor was whether his expressions were made pursuant to his duties as a deputy district attorney. In *Garcetti,* the employee did not dispute that he prepared the memorandum 'pursuant to his official duties as a prosecutor,'" and therefore, the Court held that the employee was not entitled to First Amendment protection for his expressions.

The Defendants contend that Plaintiff's speech is not protected by the First Amendment because his expressions regarding concern with Chief Lindsey's abilities and the new program he intended to implement were made pursuant to his official duties as Major of the Administrative Services Division of the Police Department. The Plaintiff argues that the Supreme Court intended its rule in *Garcetti* to be fact-driven, and that the court should not apply it to these facts at this early stage of litigation. Although the record includes allegations of violations which could justify Plaintiff's termination, and the Civil Service Commission affirmed his termination based on such violations, for purposes of this analysis, the Court will presume that the Plaintiff was terminated solely for his speech.

The Plaintiff served as interim Chief of Police for a period of time, and at the time of his discharge was the Major

of the Administrative Services Division, one of three majors that reported directly to Chief Lindsey. During the Civil Service Commission hearing, Plaintiff testified that the implementation of a new program would directly affect his responsibilities as Major of the Administrative Services Division. When asked how the implementation of a new program without sufficient analysis could cause problems for him in his position as Major, Plaintiff testified "part of my responsibilities as Administrative Major are programs and research... our policy. In my responsibility, part of my duties are to research new programs that the department is going to implement. That's what my administrative staff exists for." The Plaintiff appears to have testified in detail that his official duties involved research for implementation of new programs and policies. Accordingly, the Court finds that the Plaintiff's expressions regarding his concerns with the implementation of a new program, and his lack of confidence in Chief Lindsey's abilities were made pursuant to his official duties, and therefore, he is not entitled to First Amendment protection for these expressions. Employers have heightened interests in controlling speech made by an employee in his or her professional capacity and need sufficient discretion to manage their operations. Official communications have official consequences that create a need for substantive



AO72A
(Rev. 8/82)

consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission. *Id.* at 422-423. The Court finds the Plaintiff has failed to state a viable claim for First Amendment retaliation, and his claim is dismissed with prejudice.

**D. Conclusion**

Accordingly, the Defendants' Motion to Dismiss is **GRANTED.** The Plaintiff's claims for violation of his due process and First Amendment rights are DISMISSED WITH PREJUDICE. Whereas the Court has determined that it does not have jurisdiction over Plaintiff's federal claims, it cannot exercise pendant jurisdiction over Plaintiff's state claims, and those claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 9th day of May, 2008.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge